J-S08006-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KAREEM R. SAUNDERS | : | |
| | : | |
| Appellant | : | No. 1413 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered April 29, 2025
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0002092-2021

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED APRIL 28, 2026**

Kareem R. Saunders appeals from the judgment of sentence imposed on April 29, 2025, for his convictions of theft by unlawful taking and receiving stolen property.[1] Saunders alleges the trial court erred in denying his motion to dismiss for a violation of Rule 600.[2] After careful review, we affirm.

The trial court set forth the relevant factual history:

> The store manager of the 7-Eleven convenience store located in Conshohocken ... contacted authorities regarding ongoing theft involving an employee. The manager disclosed that he typically keeps approximately $2,000 to $4,000 in cash on the premises in order to pay vendors. The manager suspected theft had been occurring in light of the fact that the cash was not lasting to pay the vendors in the same time frames as in the past. The manager

---

[1] 18 Pa.C.S.A. §§ 3921(a) and 3925(a), respectively.

[2] Pa.R.Crim.P. 600.

installed video surveillance equipment to cover the area where the cash was stored.

On September 25, 2020, the manager counted $1,185 in cash before he stored it inside the premises and when he counted the cash again on September 27, 2020, he observed that only $2.00 was left. A review of video surveillance from this time period revealed that [Saunders], who was an employee at the store, entered the area where the cash was held and took the money while the manager was in front of the store. The manager subsequently reviewed previous surveillance videos from the times [Saunders] was working and observed him removing cash on multiple occasions while the manager was at the front of the store. [Saunders] stole a total of $10,000 from the store during the time period between July 12, 2020 and September 27, 2020. The manager contacted the authorities on September 28, 2020.

Trial Court Opinion, 9/16/25, at 1-2.

A criminal complaint charging Saunders with the above-noted charges was filed on September 30, 2020. A preliminary hearing was scheduled for October 14, 2020. At that time, Saunders requested a continuance. The magistrate granted the request and rescheduled the preliminary hearing for April 7, 2021.

Saunders waived his formal arraignment, which was scheduled for April 20, 2021. On September 13, 2021, the Commonwealth filed the criminal information. The first pre-trial conference was scheduled and held on May 4, 2022. Saunders asked for a continuance and the pre-trial conference was rescheduled to June 15, 2022. On June 15, 2022, Saunders failed to appear and a bench warrant was issued for his arrest. Saunders was apprehended on the bench warrant on July 2, 2024. The next pre-trial conference was scheduled for August 1, 2024. Saunders requested a continuance on August

1, 2024 and the pre-trial conference was rescheduled for August 27, 2024. On August 21, 2024, Saunders filed a motion to dismiss for violation of Rule 600.

The trial court held a hearing on the motion on September 18, 2024. At the hearing, both parties limited the disputed time period to April 20, 2021, through May 4, 2022. The trial court heard testimony from a deputy court administrator, Lauren Heron; the initial assistant district attorney assigned this case, Tanner Beck; the assigned investigator in the District Attorney's office, Brittany Troutman; and another assistant district attorney, Thomas McGoldrick. At the conclusion of the hearing, the court ordered both parties to submit briefs in support of their respective positions. The trial court denied the motion to dismiss on December 17, 2024.

Saunders proceeded to a stipulated bench trial on January 10, 2025. The trial court found him guilty as noted above. The trial court sentenced Saunders on April 29, 2025, to 4 months to 23 months' incarceration, followed by a consecutive 23 months of probation, and ordered restitution to the victim in the amount of $10,000. Saunders filed a timely appeal and complied with the court's order to file a Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b). The trial court authored its opinion on September 16, 2025, referring this Court to its opinion denying the motion to dismiss filed on December 17, 2024. *See* Pa.R.A.P. 1925(a).

Saunders raises one issue for our review:

> Whether the trial court abused its discretion in denying [Saunders'] Rule 600 motion to dismiss due to the

- 3 -

Commonwealth's failure to exercise due diligence in brin[g]ing [Saunders] to trial within 365 days of the filed criminal complaint[?]

Appellant's Brief, at 4 (unnecessary capitalization omitted).

We begin with our well-established standard and scope of review:

We review the denial of motions seeking dismissal based on a violation of Pa.R.Crim.P. 600 for an abuse of discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. Additionally, we must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Brandt*, 337 A.3d 973, 978 (Pa. Super. 2025) (citations and quotation marks omitted).

Rule 600 provides that trial must commence within 365 days after filing the criminal complaint against a defendant. *See* Pa.R.Crim.P. 600(A)(2)(a). "[P]eriods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

This Court has explained:

Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases. In determining whether an

accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.

Significantly, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth. Thus, so long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

Where a defendant is not brought to trial within that 365-day period, a defendant may seek dismissal of the charges. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges.

The first step in conducting a Rule 600 analysis is to calculate the mechanical run date. … It is calculated by adding 365 days to the date on which the criminal complaint is filed.

**Brandt**, 337 A.3d at 978-79 (citations, quotation marks, and ellipsis omitted).

The mechanical run date is only the starting point in determining if Rule 600 has been violated.

When delays are not caused by the Commonwealth, those periods of time, known as excludable periods, are added to the mechanical run date to produce the adjusted run date. The adjusted run date provides the deadline for the Commonwealth to bring the defendant to trial under Rule 600. Time attributable to the normal progression of the case simply is not delay for purposes of Rule 600 and, thus, counts toward the 365-day deadline.

To determine whether delays are excludable from the Rule 600 calculation, the rule requires that the cause of the delay must first be determined before courts may consider whether the Commonwealth acted with due diligence throughout the life of the case. It is only when the Commonwealth both caused the delay and lacked due diligence that the delay is properly included in the Rule 600 calculation.

\*\*\*

> However, where the cause of the delay is attributable to matters outside the Commonwealth's control, such as court closures during a pandemic as well as other medical-, weather-, and security-related emergencies, [the Pennsylvania Supreme Court in ***Commonwealth v. Lear***, 325 A.3d 552, 563 n.9 (Pa. 2024) held] that these delays constitute other periods of delay for which the Commonwealth does not need to prove due diligence. The ***Lear*** Court found delays attributable to the pandemic to be excludable time because no amount of due diligence on the part of the Commonwealth could have possibly hastened the defendant's trial date. In other words, when delays occur as a result of circumstances outside of the Commonwealth's control, those delays are excludable from the Rule 600 calculation.

***Id.*** at 979-80 (citations, brackets, and quotation marks omitted).

Here, the mechanical run date was September 30, 2021, one year after the criminal complaint was filed. Saunders argues that trial was required to be held before this date. ***See*** Appellant's Brief, at 16-18. Saunders, although admitting to a defense continuance of the preliminary hearing from October 14, 2020, to April 7, 2021, does not provide us an accounting of any delays nor does he provide us the adjusted run date based upon his calculations. ***See id.***

Saunders' only argument is that the Commonwealth failed to exercise due diligence between the formal arraignment date of April 20, 2021, and the first pre-trial conference on May 4, 2022. ***See id.*** at 17. However, he does not explain why this time was not excludable due to the pandemic or the delays caused by the pandemic after the Montgomery County Court of Common Pleas reopened to the public. Saunders simply claims that because trial was not held

prior to September 30, 2021, he is entitled to dismissal of his charges. **See id.** at 18. We cannot agree.

The Commonwealth responds that the delay was a result of the administrative backlog caused by the pandemic and therefore reflects periods of delay that are excludable from the Rule 600 clock. **See** Appellee's Brief, at 10-11. Alternatively, the Commonwealth asserts it exercised due diligence, even if the time is attributable to it, and relies upon the evidence admitted at the Rule 600 hearing. **See id.** at 11-14.

Our review of the record confirms that the time was attributable to other periods of delay, of which the Commonwealth had no control. **See Brandt**, 337 A.3d at 980-81. Because Saunders only focuses on the time between April 20, 2021, and May 4, 2022, we will only discuss that specific time period.

In Montgomery County, Rule 600 was suspended due to the pandemic between March 12, 2020, (before the charges against Saunders were filed) and August 31, 2021. **See** In Re: Judicial Emergency Order, 8/30/21 (single page; referencing In Re: Judicial Emergency Order, 6/3/20, (single page; suspending Rule 600 until further order of court)). The Pennsylvania Supreme Court found "the Commonwealth was not responsible for the suspension of all criminal jury trials or the protocols adopted in Montgomery County in response to the COVID-19 pandemic[.]" **Lear**, 325 A.3d at 563. Therefore, the delay between April 20, 2021 and August 31, 2021, was a period of delay not

attributable to the Commonwealth and does not count towards the Rule 600 365-day deadline to try Saunders.

For the time between August 31, 2021, and May 4, 2022, we must evaluate the testimony from the Rule 600 hearing to determine whether this time is also a period of delay not counted against the Commonwealth or if it is delay caused by the Commonwealth. Only if the delay is caused by the Commonwealth do we then consider whether the Commonwealth exercised due diligence. *See Brandt*, 337 A.3d at 979.

At the hearing, Lauren Heron, a Deputy Court Administrator that oversees the criminal division of the Montgomery County Court of Common Pleas, testified to the scheduling of matters during and after the pandemic. *See* N.T. Rule 600 Hearing, 9/18/24, at 6-7. Specifically, she scheduled criminal cases for their first pre-trial conference after formal arraignment was either held or waived. *See id.* at 7-8. All pre-trial conferences were suspended from March 2020 until January 2021. *See id.* at 8. In January 2021, the pre-trial conferences were called triage hearings and only one judge was hearing them at that time. *See id.* at 8-9. Only 20 defendants were scheduled per day, as all hearings were held through Zoom. *See id.* at 9.

Initially, the only cases scheduled for pre-trial conferences were those cases that were at the Court of Common Pleas prior to the pandemic that had defense representation. *See id.* at 12. After that, court administration focused on scheduling *pro se* defendants whose cases were at the Court of Common

Pleas prior to the pandemic. *See id.* It was not until approximately May or June 2021 that court administration was able to start scheduling cases that arrived at the Court of Common Pleas after the pandemic began. *See id.* at 12-13. Court administration went in chronological order, starting with the cases that arrived at the Court of Common Pleas in March 2020, then April 2020, et cetera. *See id.* Saunders' case did not arrive at the Court of Common Pleas until April 2021.

It was not until May 2021 that a second judge started hearing pre-trial conferences. *See id.* at 11. With two judges, the court was now seeing 40 defendants per day. *See id.* at 11-12. This lasted until the end of 2021. *See id.* at 12.

Notably, prior to the pandemic, Montgomery County "carried around 4,000 active cases, give or take." *Id.* at 10-11. Because of the pandemic, "[t]hat number ballooned up to over 9,000. And that balloon didn't actually hit its peak until November of 2021[.]" *Id.* at 11. Saunders' case was part of that balloon, arriving at the Court of Common Pleas in April 2021. In April of 2021, court administration was still in "stage one" pre-trial conference scheduling, meaning that they were still scheduling cases that were at the Court of Common Pleas prior to the pandemic. *Id.* at 15-16. Court administration continued to schedule pre-trial conferences from the oldest cases to the newest cases throughout the period from April 2021 through May 2022, and beyond. *See id.* at 18-19.

- 9 -

Here, the delay from April 20, 2021, through May 4, 2022, resulted from the pandemic and administrative backlog caused by the pandemic. The delay here was "a result of circumstances outside of the Commonwealth's control[.]" *Brandt*, 337 A.3d at 980. Court administration scheduled cases as quickly as they could, given the reduced number of defendants that could be seen per day and the increased number of cases waiting for pre-trial conferences. They worked in chronological order and simply were not able to schedule Saunders for a pre-trial conference prior to May 2022. The delay cannot be attributable to the Commonwealth and therefore a due diligence inquiry is unnecessary. We find the delay qualifies as other periods of delay and is excluded from the Rule 600 clock. We therefore affirm Saunders' judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026